IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

PELICAN CREEK HOMEOWNERS, LLC,
H.A. BUSSEY, KATHERINE BUSSEY,
BONNIE WILHELM, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ANDREW MURRAY,
and HERBERT L. PUGH and MABEL J. PUGH,

     Appellants,

 v.                                          Case No.  5D16-4046

JOHN T. PULVERENTI and DOROTHY E. PULVERENTI,

     Appellees.

_____/

Opinion filed February 2, 2018

Appeal from the Circuit Court
for Brevard County,
John M. Harris, Judge.

James R. Dressler, Merritt Island, for
Appellants.

James H. Wyman, of Hinshaw &
Culbertson LLP, Coral Gables, and
Glenn S. Banner, of Hinshaw & Culbertson
LLP, Jacksonville, for Appellees.

EGAN, ROBERT, Associate Judge,

H.A. and Katherine A. Bussey, Andrew Murray, Herbert L. and Mabel J. Pugh, (collectively "Appellants"), and Pelican Creek Homeowners, LLC ("PCH")[1] appeal the final summary judgment granted in favor of John T. and Dorothy E. Pulverenti ("Appellees"), which denied Appellants' injunction seeking the removal of Appellees' boathouse and dock from Appellants' property. Because Appellants established their ownership of the disputed property, we reverse the trial court's previous denial of their motion for summary judgment seeking injunctive relief, as well as the order granting summary judgment in favor of Appellees. We affirm, without further discussion, both summary judgment orders related to the PCH claims.

The origins of this dispute reach back to 1960 when Arthur J. and Florence W. Gould ("Pelican Developers") platted land they owned within Morningside Heights as Pelican Creek Estates. The plat was divided into thirty lots, with a road down the center of the plat and two canals connecting to the Banana River, one on the north ("canal one") and one on the south ("canal two") margins of the plat. Pelican Developers wrote the following on the dedication plat:

> KNOW ALL MEN BY THESE PRESENTS, That the undersigned, being the owners in fee simple of the lands described in the foregoing caption to this plat, do hereby dedicate said lands and plat for the uses and purposes therein expressed and dedicate the Streets, alleys, thoroughfares, parks, canals, and drainage easements shown hereon to the perpetual use of the public.

---

[1] While PCH is a party on appeal, its claim of ownership derives from a deed that was cancelled after the complaint was filed. As such, the entry of summary judgment as to PCH's ownership interest was proper. Further, Appellants do not contest the entry of summary judgment against PCH's claims of ownership on appeal.

Pelican Developers also platted a ten-foot drainage easement ("drainage area") along the north side of canal one, on the margin of the plat, and dedicated the easement to Brevard County for maintenance purposes, which the county subsequently relinquished by resolution in 1980. Appellants own adjoining lots numbered six, seven, and eight, which are located on the south side of canal one.

Appellees' property is located in Morningside Heights, on the north side of canal one and the drainage area. Neither Appellees, nor their predecessors in title, have a valid claim to the drainage area or canal one. Appellees' dock and boathouse, which are the subject of this appeal, built in 2006, encroach into the drainage area and canal one.

In 2013, Appellants sued Appellees, alleging ownership of the drainage area and canal one, and seeking an injunction requiring Appellees to remove the dock and boathouse from the property. Appellants also sought to have Appellees enjoined from future trespass on the property. In April 2014, Appellants moved for summary judgment, arguing that Appellants owned the canal and drainage area. Appellees responded that an issue of material fact existed relating to their boundary lines. The trial court denied the motion for summary judgment, which forms one basis for Appellants' appeal.

Two years later, Appellees moved for final summary judgment, arguing they were entitled to judgment as a matter of law because Appellants did not have a property interest in the drainage area and lacked standing. Appellants argued they had title to the drainage area because a public dedication does not convey title to lands, citing Smith v. Horn, 70 So. 435 (Fla. 1915), which holds that title to the portion of land subject to a public dedication remains with the dedicator and, when referenced in a plat map, accompanies the conveyance of the abutting lots. Appellants argued the court should deny the motion

3

or alternatively grant summary judgment in their favor in relation to the drainage area. The trial court granted final summary judgment in favor of Appellees on September 20, 2016. This appeal followed.

The parties on appeal treat the September 20, 2016 order granting final summary judgment in favor of Appellees as a final order, subject to immediate appeal. We disagree because that order did not dispose of Appellees' compulsory counterclaims and the case required further judicial labor. See Sieber v. Gil, 193 So. 3d 27, 30 (Fla. 3d DCA 2016) (holding a summary judgment order granting partition is not a final appealable order because compulsory counterclaims remained); City of Haines City v. Allen, 509 So. 2d 982, 983 (Fla. 2d DCA 1987) ("If the counterclaim is compulsory, the disposition of it or the main claim cannot be appealed until both have been disposed of."). We nevertheless find jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(A), which allows review of non-final orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions."

The trial court's final summary judgment order did not conclusively determine ownership of the disputed property consisting of the drainage area and canal, which we believe is necessary to resolve the issues in this case. The standard of review of a summary judgment order is de novo and requires viewing the evidence in the light most favorable to the non-moving party. See Skelton v. Real Estate Sols. Home Sellers, LLC, 202 So. 3d 960, 961 (Fla. 5th DCA 2016) (quoting Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000)).

In order to determine ownership of the disputed property, this court must first determine whether Pelican Developers' public dedication in 1960 was a "common law dedication" or a "statutory dedication." A common law dedication,

> [i]n the absence of clear contrary intent, <u>does not divest the owner of the title to the land</u>, but only subjects the land and the title to the public easement for street purposes; and, if the easement be lawfully surrendered and relinquished, <u>the title to the land remains in the dedicator or his successors in title</u>, discharged of the easement.

Robbins v. White, 42 So. 841, 843-44 (Fla. 1907) (emphasis added).

By contrast, a statutory dedication divests the owner of title to the land. § 95.361, Fla. Stat. (2016). A statutory dedication can occur either when the government constructs and maintains a road continuously for four years or when the government maintains a road, though created by a private entity, for seven years. Id. With a statutory dedication, title to the land is vested with the government as follows:

> The dedication shall vest all right, title, easement, and appurtenances in and to the road in:
>
> (a)  The county, if it is a county road;
>
> (b) The municipality, if it is a municipal street or road; or
>
> (c) The state, if it is a road in the State Highway System or State Park Road System,
>
> Whether or not there is a record of a conveyance, dedication, or appropriation to the public use.

Id. Additionally, filing a map of the dedication and referring to section 95.361 serves as prima facie evidence that the government owns the land. Id.

Here, the dedication on the plat map does not refer to section 95.361, and no other record evidence suggests an intent by Pelican Developers to create a statutory

5

dedication.[2] Therefore, the dedication to the public was a common law dedication, and, as such, title to the property remained with Pelican Developers subject only to the public easement. See Robbins, 42 So. at 843-44.

We next determine whether Pelican Developers, as the dedicator, reserved the land to itself when conveying the abutting lots. When the owner of a tract of land makes a subdivision and includes on the plat a dedication of roads, canals, or walkways for public use, the conveyance of the lots abutting the roads, canals, or walkways includes title to the property subject to the easement, unless expressly reserved by the dedicator. See Smith, 70 So. at 436; see also Burns v. McDaniel, 140 So. 314, 316 (Fla. 1932) ("[I]n the absence of evidence to the contrary, an abutting lot owner is presumed to own the same to the center of the street."); Travis Co. v. City of Coral Gables, 153 So. 2d 750, 751 (Fla. 3d DCA 1963) (applying the same rule to canals).

Additionally, section 177.085, Florida Statutes (2016), which codified the common law rule in 1972, provides:

> When any owner of land subdivides the land and dedicates streets, other roadways, alleys or similar strips on the map or plat, and the dedication contains a provision that the reversionary interest in the street, roadway, alley or other similar strip is reserved unto the dedicator or his or her heirs, successors, assigns, or legal representative, or similar language, and thereafter conveys abutting lots or tracts, the conveyance shall carry the reversionary interest in the abutting street to the centerline or other appropriate boundary, unless the owner clearly provides otherwise in the conveyance.

---

[2] We recognize that section 95.361 references only roads and does not specifically include dedication of a navigable body of water such as canal one. Under the facts of this case, however, we need not determine if the statute would also apply to canal one.

6

(emphasis added). Further, dedicators had one year after the implementation of section 177.085 to expressly reserve title to the dedicated land or be forever barred. Id.

Here, the conveyances to Appellants and their predecessors did not contain a reservation of the land subject to the public dedication. There is also no record evidence that Pelican Developers asserted a claim after enactment of section 177.085. Therefore, the conveyances to Appellants of the abutting properties included title to the land subject to the public dedication. See Burns, 140 So. at 316.

Finally, we must determine how much of the land subject to public dedication Pelican Developers conveyed to the abutting property owners. Generally, abutting property owners receive title to half of the land subject to public dedication. See id. This rule follows the presumption that, "if the street is abandoned, there is little value for the dedicator to retain title to the street, because the narrow strip of land abutting the lot is not much use for anything other than a street." John Redding, Property Subject to Easements, Dedications, Licenses and Restrictions, Fla. Real Prop. Sales Transactions §10.21 (8th ed. 2015). However, the potential increase of the lot size of the abutting landowner would add substantial value. Id.

The rule regarding half ownership differs, however, when a public dedication is located on the edge of the plat. Under that scenario, the abutting property owners have title to the full width of the public dedication property. See Caples v. Taliaferro, 197 So. 861 (Fla. 1940) (agreeing with the rule but choosing not to apply it to their facts); see also Bonifay v. Dickson, 459 So. 2d 1089, 1095 (Fla. 1st DCA 1984) ("[W]here the dedicated street runs along a navigable body of water, the abutting lot owners own the fee title to

7

the entire width of the dedicated land, as well as title to the accretions formed along the street." (citations omitted)).

Here, the plat for Pelican Creek Estates dedicated canal one to the use of the public and the drainage easement to the county for maintenance purposes, and both easements are on the edge of the plat. Accordingly, Appellants assert that they, as abutting landowners along canal one, have title to both the entire canal and drainage area. By contrast, Appellees contend that, because canal one and the drainage area consist of two separate areas on the plat, the general rule of abutting owners receiving half should apply and, therefore, Appellants have title only to the center of canal one and no ownership interest in the drainage area. We agree with Appellants. To do otherwise would have the undesired effect of leaving the drainage area and the northern half of canal one without an owner. Appellees do not contend on appeal that they own the drainage area, and, as Appellants correctly point out, neither Appellees nor their predecessors in title have ever owned the drainage area.

The exception to the general rule of half ownership also applies here because Appellants' lots abut the dedicated land on the edge of the same plat from which they derive title. Caples, 197 So. at 861. It logically follows that Appellants can be the only contributors to both dedicated parcels because only their property abuts the dedicated land in the Pelican Creek Estates plat, and therefore they are entitled to the entirety. See id. This conclusion also would "[maximize] the utility of the land to society as a whole." Redding, supra, §10.21 ("By vesting title in the party who derives the greatest benefit from the land underlying the vacated dedication, this rule has the public policy effect of 'maximizing the utility of the land to society as a whole.'"). Appellants would derive the

8

greatest benefit from sole ownership because it would both increase the size of their lots and ensure access to the drainage area for future maintenance of the canal.

We reject Appellees' contention that Appellants have no standing to seek injunctive relief because their interest in the disputed property is merely reversionary in accordance with section 177.085. While section 177.085 refers to the interest of abutting property owners as reversionary, case law has long held that, in the context of a common law dedication, the abutting owners have fee simple subject to the dedication. See Burns, 140 So. 2d. at 316; Smith, 70 So. at 436.

Because Appellants are the actual owners of the entire canal and drainage area, the trial court should have partially granted their 2014 motion for summary judgment. "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law." Skelton, 202 So. 3d at 961 (quoting Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)). Additionally, a trial court may enter partial summary judgment for part of a pleading with the case continuing as to the balance. Berry v. Pyrofax Gas Corp., 121 So. 2d 447, 450 (Fla. 1st DCA 1960); see also Fla. R. Civ. P. 1.510 ("A party seeking to recover on a claim, counterclaim, cross-claim, or third-party claim or to obtain a declaratory judgment may move for a summary judgment in that party's favor on all or any part thereof . . . .").

As discussed above, Appellants established that they have title to the canal and the drainage area subject to the dedication to the public, and they demonstrated the nonexistence of any genuine issue of material fact by attaching the relevant deeds and plat maps to their motion. In response, Appellees failed to provide sufficient countervailing evidence to establish an issue of material fact. See Golden Hills Golf & Turf Club, Inc. v.

9

Spitzer, 475 So. 2d 254, 254–55 (Fla. 5th DCA 1985) ("[O]nce [the movant] tenders competent evidence to support his motion, the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist."). Thus, no genuine issue of fact remained. See Volusia Cty., 760 So. 2d at 131. As such, Appellants were entitled to summary judgment as a matter of law because an injunction is the appropriate remedy for a continuous trespass. See Fla. Action Films, Inc. v. Green E. No. 2, Ltd., 29 So. 3d 471, 472 (Fla. 3d DCA 2010) (citing Autozone Stores, Inc. v. Ne. Plaza Venture, LLC, 934 So. 2d 670, 673 n. 1 (Fla. 2d DCA 2006) (confirming that an injunction is an appropriate remedy for a continuous or repeated trespass)).

Accordingly, we reverse the trial court's order in that regard, with instructions to issue an order requiring Appellees to remove the dock and boathouse and enjoining them from future trespass. Likewise, we reverse in part the 2016 order granting summary judgment in favor of Appellees against Appellants in relation to the drainage area and canal one, but affirm in part as to PCH's claim.

AFFIRMED in Part; REVERSED in Part; and REMANDED with Instructions.

COHEN, C.J. and EISNAUGLE, J., concur.